The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. Um, please be seated. Mr. Carpenter.  This appeal presents a question of first impression under the new Crime of Violence Guideline. And we're asking the Court to hold that consistent with its usage in the vast majority of jurisdictions, the term conspiracy in that guideline requires an overt act. To reach that holding, the Court has to answer two questions. First, does Taylor's contemporary definition apply in this context? And if it does, does the contemporary definition require an overt act? If we turn to the first question of whether Taylor applies in this context, the Sentencing Commission spoke precisely to this question in its recent amendment, which took effect in 2016. We quoted the passage on page four of the reply brief where the Commission says that it intends for the contemporary definition to apply. Unless, of course, it provides a more specific definition somewhere else in the text. Here, with respect to conspiracy, it used the term alone without any further definition. And that, according to the Commission's stated intent, means that we apply the contemporary definition. And that statement of the Commission's intent in Amendment 798 is critical because it undercuts the rationale of the out-of-circuit cases that the government relies on here. All of those were decided before Amendment 798 took effect, decided before the Commission made this clear statement of its intent. And the statement... I'm wondering whether we even need to get into all of this business about generics and everything else when we have such clear textual guidance. From the enumerated clause in the accompanying commentary in 4B1.1, I mean, the guidelines reference this. And then you turn to those provisions and murder is the first listed crime in the enumerated clause. Yes, sir. And then you go right down to the commentary and it says crime of violence include the offenses of aiding and abetting and conspiring. So what you have here is very clear textual guidance. I don't know why we should go beyond that. Well, the reason, Your Honor, that you go is twofold. The first is the Commission itself says when you're dealing with these things, you apply the generic contemporary definition. And this Court's own precedent dictates the same thing. It doesn't bother me that they want to apply a generic definition because most federal crimes, generically, they don't contain an overt act requirement. I mean, we could talk about an overt act requirement. We're going back to the dark ages because the law of conspiracy is moving away from overt act requirements. Your Honor, with respect, I would say that the precise opposite is true. At the common law back in the dark ages, there was no overt act required. And in the past hundred years, 40 out of 54 jurisdictions have rejected that contention. So they have. I mean, those are state laws, and I don't think that the state law can override the clear textual directions of the federal guidelines. Well, there is no clear direction. Certainly, the Commission could have said in this definition conspiracy or conspiring regardless of whether an overt act is required. It didn't say that. It could have said conspiracy as defined by. I don't think it got into it particularly one way or the other. Well, I would go to this Court's precedent in Dozier just last year, which deals with this exact same piece of commentary on inchoate offenses. And what Dozier says is that when we have this situation of an inchoate offense, you do a two-pronged analysis. You look both at whether the object qualifies here. We concede that the object crime, murder, does satisfy the generic definition of murder. But Dozier says we also have to look at whether the inchoate offense itself, in that case it was attempt, and in this one it's conspiracy. Dozier says we have to look at whether that inchoate offense also conforms to the generic definition of the inchoate offense. There, the particular offense in Dozier did qualify as generic attempt, but here this offense doesn't satisfy the definition of contemporary conspiracy. Mr. Carpenter, would you mind? I'm sorry, I was trying to take notes and didn't get it all. Would you mind going back to your construct at the beginning that there are two questions and that the first is whether the generic definition applies? You said we have to answer two questions. Yes. Would you mind going back over that for me? Not at all, Judge Duncan. The first question is whether Taylor's contemporary definition applies in this context under the guidelines. And the second is whether, if it does apply, it requires the overt act. And so on the first question of whether it applies in this context, this Court has a long history of applying the contemporary definition to terms that the Sentencing Commission uses. You know, going, Judge Wilkinson, your decision in Ron Hall-Castaneda is one example of that. The most recent decision is the Gaddis decision on generic robbery. The Court has consistently, for years and years, said when there's a term used by the Sentencing Commission in the sentencing guidelines, we interpret it according to its contemporary definition. And that is exactly what the Commission itself recognized in Amendment 798, which, again, took effect in August of 2016. The federal generic here does most federal conspiracy crimes don't have an overt act requirement. Your Honor, I agree with that, that the majority of federal provisions don't. But the federal government is just one jurisdiction when we are determining the contemporary definition of a term. So if you look at your decision in Ron Hall-Castaneda, you cite the federal government as one of the 34 jurisdictions. That's true, but it also, we're dealing with the question of whether a uniquely and totally federal sentencing scheme can be overridden by various state laws. And that seems to me odd because we have a situation of dual sovereignty in which states are allowed to define their own crimes and to set their own punishments, and the federal government ought to be able to as well. Each sovereign defines its own crimes, and it sets its own punishments. And that's what dual sovereignty is all about. Your Honor, I agree with all of that. The only problem here is the federal government does get to set the terms of its own sentencing scheme, and it has designated the Sentencing Commission to do that. We have no doubt and no dispute that if the Sentencing Commission wants to amend the guidelines to say, we want to cover all conspiracies regardless of whether an overt act is required, it has the authority to do that. State law can do absolutely nothing about that. But the authority to do that is in the hands of the Sentencing Commission, not in the hands of this court. We have to, as courts and as litigants, apply the words that the Sentencing Commission has used. Here they use the word conspiracy by itself. They've instructed us when we do that, apply the contemporary definition. When we apply the contemporary definition. Excuse me, Judge Duncan. The problem here to me is that the contemporary, we have done this in a number of contexts. We look to the consensus that has built up among the states because of the, there is, this is a, the enhanced sentencing regime is nothing if not counterintuitive in a lot of ways. So it does appear that there's one way to look at it that leads you in the direction of the commentary looking at conspiracy to commit murder, you know, and you're in for a penny, in for a pound. But then if you just look at conspiracy, it takes you in the direction of looking at it as the body of states define it. You're right, and so let me answer that in two ways. The first, I think the latter framing that you set out is the right one to apply here because the commission used conspiracy not specifically in conjunction with any one offense. In conjunction with an enumerated offense. Exactly. It used conspiracy more broadly. So whatever definition of conspiracy this court applies I think has to apply to every one of the enumerated offenses, not just to murder. And it sort of takes conspiracy, it's going to focus the attention back on the offense which one is conspiring to rather than on conspiracy, if you follow that. To do otherwise I guess is what you're saying. Yes, I agree, I agree, and that's what, and I think the Dozier court was right about how it laid this out. It's a little bit confusing. No, it's a lot confusing. Yeah, and so, but Dozier breaks it down and makes it at least simpler to apply going forward, which is you look at the NCOA defense, you say does it satisfy the contemporary definition, then you look at the object and say does it. And in terms of policy, it's important to point out a couple of things that I maybe didn't say enough about in the briefs, and that is I think the commission would have good reasons to exclude these no overt act conspiracies from the statute of the scope of the crime of violence enhancement. If you look at the recent amendment, one thing that the commission did was pretty narrow, pretty substantially narrow the types of crimes that qualify. You do realize you're way beyond the scope of my, I'm not trying to stop you, but you've answered my question and I'm having enough trouble with the law. Fair enough. The policy is. Well, let me say just a little bit about the policy. Of course, I didn't mean to suggest otherwise, I was just. One more thing about the law. On the policy, the commission took out burglary offenses entirely. It took out the residual clause entirely. It narrowed the scope of extortion substantially. And it said at page 131 of the supplement to appendix C, our goal here is to focus these enhancements on the most dangerous offenders. And I think it would be hard to say that a crime is categorically among the most dangerous when the conduct, a no overt act conspiracy is legal in 34 states and something like 40 total jurisdictions. Now, of course, what the commission also said. We're talking here about conspiracy to commit murder. And the point is, and the point the Supreme Court has made is that these inquiries have to end up with some kind of common sense. And it just doesn't pass muster to say that conspiracy to commit a murder in aid of racketeering activity, here it's a drug activity, is somehow not a crime of violence. And the Supreme Court is going in that direction with cases like Voisin, which says that you don't need to actually commit the murder or land the blow in order to have something qualify as a crime of violence. And you read the Voisin opinion and you understand that a crime of violence is something other than actually taking a weapon and hitting somebody over the head. That a crime of violence can contain a lot of predicate steps. And that's the sentencing guidelines. If you just look at them textually and go to 4B1 and look at the enumerated clause, it says murder. And then you look at the commentary and it says conspiring. And the predicate offense to the 922G crime was a conspiracy. But, Your Honor, that begs the question of what conspiring means. A violent crime in aid of racketeering activity. Right. And so I think, one, that begs the question of what conspiring means there. But to take a step back, the other principle from all these cases that we always apply and the Court always applies is we look at the least culpable conduct covered by a particular offense. Can we stay with that for a minute, though? But 1959A5 speaks in terms of conspiracy. Right? Period. So the focus actually, the thing that I have trouble with here is it just seems very counterintuitive that conspiracy to commit murder isn't. But 1959A5 doesn't speak to conspiracy to commit murder. It speaks to conspiracy. Right. And I think it is very confusing because we use the word and federal statutes use the word conspiracy in the two different ways. And so we have, you know, this Court's Eddian decision recognized that in the one particular context, conspiracy carried this common law meaning. And because of the presumption that the Supreme Court had set up that absent contrary indications, we apply the common law meaning. Here we have, you know, not the context of congressional legislation, but the context of the sentencing commission. And we have those contrary indications where the commission itself has said you apply the contemporary definition. All right. Here's some real bottle time. Ms. Ray.  May it please the Court. Whether or not this Court applies the generic definition or not, Mr. McCollum, the district court properly enhanced Mr. McCollum's sentence. And I'd like to begin by responding to a couple of things that Mr. Carpenter said. First of all, the sentencing commission's amendment that he relies so heavily upon, if one reads that, it simply says courts apply. It doesn't say we intend. It's actually just a statement of courts, you know, it's an acknowledgment that typically they apply the generic contemporary definition. And it refers to the enumerated offenses clause. That's not actually the part of the guideline that this Court is called upon to interpret today because they've conceded that murder qualifies. So that guideline commentary that he relies heavily upon really doesn't speak to this question. And as to the broader point that Mr. Carpenter made about how the guideline was narrowing the definitions, they did narrow, the commission narrowed the definitions of those enumerated offenses, some of them, although robbery went notably from the commentary up to the guideline text. So in some ways the guideline broadened and made it clearer, other ways it narrowed. But they kept conspiracy. There was no narrowing of that particular part of the guideline. That was left alone. Could I, I mean, the difficulty I have is with the starting point. And you heard me express a little bit of my frustration in questioning to Mr. Carpenter. It seems to me that we are to some extent boxed in by what we have said. We analyzed the commentary provision under Taylor. And under Taylor it seems to me that the contemporary definition of crimes comes from state. And we've done that in a number of cases. So the language of 1959A5 says conspiracy. And if you focus on conspiracy, that leads you away from interpreting the offense in the context of the enumerated offenses. It's conspiracy, not conspiracy to commit murder. Well, if we get beyond that threshold, then I think you're right. But I'm stuck at 1959, the definition of conspiracy. Your Honor, the 1959A5 says conspiring to murder. That's what that language is. So first of all, it says conspiring to murder. It uses the same language as the guideline, which is why the United States doesn't believe that we need to get to the generic definition. But let me also make this point. Taylor applied the contemporary definition because that definition... Was the predicate offense here, it was conspiracy to commit murder? It was conspiring to murder, yes, sir, in aid of racketeering. It wasn't conspiring to kidnap or maim or anything else. No. It was conspiring to murder. That's right. And that was the predicate offense. It was. But I want to address, and that's right, Your Honor, but I would like to address what Taylor said about what the generic definition means. Thank you. Taylor used the contemporary definition for a few very specific reasons, which was that the common law definition was narrower, and it really didn't make sense. It was obsolete was the language that the court used in Taylor. Taylor did not say, from henceforth, every time a court determines the generic definition, it should be the contemporary definition. That's not what Taylor said, and that is not what is required. And this Court's decision in Etienne looked very specifically at why one would not apply the contemporary definition in the context of the word conspiracy, because to do so would render null and void the sort of the purpose. So the purpose doesn't go away. Taylor used the contemporary definition because it matched the purpose of the Armed Career Criminal Act to apply to most burglaries. Now, if this Court applies the generic definition to apply, as it should, to most murder conspiracies, then one would not apply the overt act requirement because one-third of states and the vast majority of federal statutes do not include an overt act. It does not make sense. And Taylor was premised on common sense. It was premised on an interpretation that was consistent and faithful to the intent of Congress with respect to the Armed Career Criminal Act. And the United States respectfully suggests that if this Court is going to be faithful to the intent of the Sentencing Commission, in terms of how one says whether a conspiracy to murder, a federal commission, sentencing commission, says conspiring to murder is a crime of violence, and we have a federal offense that says conspiring to murder, and that offense doesn't include an overt act, as do nine of 14 federal murder conspiracy statutes do not require an overt act. There have been many, many expressions of exasperation about this categorical approach. The Supreme Court's closely divided over it, and that's fine. We follow it. Right. But one of the things that has gotten everybody twisted into a pretzel is this generic and, you know, and what is the generic and all the rest. And I'm wondering if trying to follow the intent of Congress here, which was to actually punish less severe crimes less severely and crimes of violence particularly repetitively more severely, do we even need to get into this generic inquiry and start counting up the number of states when the text of the guidelines is so clear? You have an instant offense of a 922G, and then you have a predicate offense that talks about conspiracy to commit murder. There's no question that he conspired to commit murder. Then you have a cross reference over to 4B1.2. 4B1.2 defines a crime of violence. It enumerates murder. Murder is the first one. There's a whole series of them, but murder starts. There isn't a person anywhere in the city of Richmond or the United States that would think murder or trying to commit a murder, conspiring to commit a murder is not a crime of violence. And then you go and to make sure the sentencing commission in commentary number one says that it's not just murder but aiding and abetting accounts and conspiring accounts. And the textual direction is clear. And if the intent of the sentencing commission and the intent of Congress is to be respected, then the clear textual definition, it ought to count for something. And when it coincides with common sense, it ought to count for something more. And so the question is are we going to get ourselves twisted into a question of counting up? How many states do this? Counting up how many states do that? You're simply nullifying intent. Yes. Yes. I agree with everything Your Honor said, Judge Wilkinson. That's 100% correct. We can talk ourselves out of it. We can talk ourselves out of it. And we can set aside wiseen and we can say, well, this is, you know, we can become convoluted. Right. And, of course, you know, for both the advocates and for the court, this entire area of jurisprudence is a bit maddening. It is convoluted. It is convoluted. It is counterintuitive. It is. But I would respectfully suggest, Judge Duncan, that in this case it doesn't have to be at all. Because Judge Wilkinson is right that the language here, one doesn't apply the generic definition Taylor began with. Gee, the plain language doesn't answer the question. The plain language in this case, the intent is clear. But I would like to concede that even one case where it doesn't have to be convoluted. It does not have to be at all. If one just looks at the language of the guideline, compares it to the language of the statute, we reach the answer. And we reach the answer that a conspiracy to commit murder in aid of racketeering. I want to be really clear about what we're talking about here. We're not talking about even a general RICO conspiracy. This is a violent crime committed in aid of racketeering, that it is a crime of violence. But let's assume for the sake of argument. Woody Guthrie says any fool can make something complicated. It takes a genius to make it simple. Fair enough, Your Honor. But I'm going to, I don't want to think too much about that in this area of jurisprudence or I start thinking that we have a lot of fools. So I'm going to, but yes. The repository of a great deal of wisdom. No question about that. I come from the mountains. I can appreciate that. He wasn't looking at you when he said that. He was looking at me. I understand. Judge Traxler. I had a foolish question. How would you have us get around Dozier? A couple ways. Well, first of all, I don't believe in that case that the United States argued what I'm presenting today, which is you don't need to get to the generic. Everyone assumed you did. But the more important way we get, you don't have to get around Dozier. You can apply it. If the court wants to apply a generic definition, there is a generic definition. The question is, does it have to be contemporary? And it's very interesting to me that courts use this word contemporary, but that doesn't necessarily mean that that's what the generic definition is. The only reason Taylor used the contemporary definition was because the contemporary definition accorded with the intent, the purpose, that if one didn't apply the contemporary definition, then we lead to an absurd result. Whereas in Etienne, this court noted that if you apply the contemporary definition of conspiracy to require an overt act, then we nullify the intent because we get to where we're carving out a federal statutes that have to have been intended to be included. So you, but you see, I'm sorry, I don't mean to interrupt. Yes. You sort of see, and I'm picking up on Judge Traxler's question, why Dozier and Taylor read together have to give us pause. Oh, I understand why. I mean, Judge Duncan, honestly, I think, I do believe that I don't think Taylor should give this court pause at all, first of all, because Taylor goes through the reasons why it applied the generic definition. And if one looks at those reasons, not one, right. And in fact, what this court explained in Etienne was Taylor rejected common law presumption because the common law definition of burglary was obsolete and inconsistent with the statutory purpose. That's where Taylor began. We have a guideline that if interpreted by its plain language, as this court held in Etienne, the same language in the Immigration and Naturalization Act, that it is contrary to common sense. And it would be obsolete if this court were to apply the contemporary definition based only on jurisdictions. And that's another point I want to make. Do we have any precedent that has disregarded language this clear? No, I don't believe so. I mean, I don't think it had to use the generic definition. It did a multiple layered analysis. I don't think it had to. And that's part of our argument is I don't think the United States, I looked back, we didn't make this argument in Dozier. And, you know, if we didn't make the argument, that's too bad. That doesn't mean, though, that I have to sort of avoid Dozier. Because I think you can apply Dozier and still the government wins here. And the government wins because the generic, the definition of conspiracy that applies to federal sentencing, it simply doesn't make sense that the generic definition would exclude the vast majority of federal conspiracies. That can't be true. And the generic definition only came out of Taylor. Vast majority? Pardon me? Vast majority? Yes, well, that's only murder offenses. The vast majority of conspiracy offenses under federal law do not require an overt act. And the Fifth Circuit in Pasadena. That takes you back to conspiracy as opposed to conspiracy. Well, that's fine. And, sure, this court could look at it and say we're going to restrict it to conspiracies to murder. The states. No, I thought that, I mean, that was, I thought what you were saying. It just. I'm saying any way you slice it, we win. Okay. I'm saying any way this court looks at it, the United States win. Because whether you want to restrict it to conspiracy to murder, which was what the Fifth Circuit did. And I want to make one note. What about the out-of-circuit cases? Have they addressed this issue? The out-of-circuit cases have addressed it in the context of the illegal reentry guideline. And three of the four circuits have held that conspiracy in that context does not require an overt act. That's the Sixth Circuit, the Fifth Circuit, and the Ninth Circuit. The only circuit to hold in that context was the Tenth Circuit. And actually that, I'm sorry, I'm just trying to remember exactly the context. But the Tenth Circuit held that conspiracy requires an overt act. And I would invite this court to read that Tenth Circuit decision because it does not, that, the reasoning in that case, I would respectfully suggest is not sound when one looks at, if we're going to take Taylor as sort of the grandparent case, right? The place from where this all started, it was because the common law definition didn't make sense to apply. It didn't work. And that is what this court noted in Etienne, that the common law definition of conspiracy does make sense. There is a presumption, even if one is going to apply the generic definition, that the common law definition is what applies. And the guideline commentary, Amendment 798, does not say anything else. It is simply a statement of facts that courts generally use the contemporary definition. But that is not required. And to get back to the Dozier point, you're saying that the court didn't have to do a generic definition, a generic inquiry in that case? I mean, I think that the court could have said attempt, you know, that you don't have to get into the weeds on what the generic definition of attempt is. But I'm not suggesting that the court's decision in Dozier was wrong. And I also don't think that, as I said, you know, I haven't really looked at the attempt issue in that level of detail, except that attempt is a little more complicated than conspiracy. So one could say, well, with attempt, we want to look at what the generic contemporary definition is. But my point is, one, the United States did not argue in that case that the plain language fit as closely as it does here. To get back to the point, has the Supreme Court or this court ever rejected language this clear in terms of a definition of a crime of violence? No. Because it's almost like the point that was made in the statutory interpretation context. You don't go into the weeds of legislative history where the statutory text is clear. You know, and I think every member of the Supreme Court would approach that way, would approach statutory interpretation clear. No need to get into the weeds of legislative history, counting this up, is clear. Absolutely. And those methodologies, that methodology, the textual methodology carries through. Yes. And that is our first point in our brief, right? That's argument number one. I do have to acknowledge that this court has gotten into those weeds at the end with respect to conspiracy. The court did look at the generic definition, but what the court held was the generic definition does not require an overt act. So I have to concede to this court that it has looked at the issue of what conspiracy means. Yes, but if it did, it didn't mean it had to. Fair enough, Your Honor. Fair enough. And again, it may not have been that there was any party in that case saying, look, the language is as clear as it is. You don't have to go there. And we are making that argument in this case. But we're also making the argument that if one goes there, when you look at the language of the guideline and the language of the way that most federal statutes define conspiracy, it does not include an overt act. And any interpretation or any generic definition formulation that excludes those offenses is so counter to the intent of the Sentencing Commission, which in Amendment 798, it was speaking about the enumerated offenses clauses. Even if you say that that was somehow guidance, which it doesn't appear to be to me, I don't read it that way at all. But if you did, it's not talking about the language in the commentary. Does it create, does your interpretation create the possibility that the Enhancement makes the conspiracy more serious? Do you see what I'm saying? That how you interpret conspiracy for purposes of the Enhancement begins to turn on the underlying crime? I'm not sure I'm understanding that. Okay, so suppose it's conspiracy to commit a nonviolent crime. Well, Your Honor, all of these, all of the predicates are violent crimes because they're in the enumerated offenses clause. So it wouldn't make a difference. I see that my time is up. If I might just respond briefly to sort of what I'm hearing is a little bit of policy question there. I'm asking the consequences of your interpretation. The consequences of our interpretation are that it is tied to an enumerated offenses clause that is restricted to crimes of violence. And the consequences are that in Taylor, part of the problem was that the contemporary definition was broader than the common law definition. And Taylor noted that we don't want to go with the narrower definition if we don't think that Congress intended that. And here, to do it the other way, the common law definition is actually broader. And it's broader for a reason because the reason that one, these are people who agree to commit violent offenses. All of the elements of the conspiracy, which means an intent and a firm agreement to actually commit a violent offense, are met. So the policy we would respectfully suggest supports our definition, too. I'm not sure I answered that question very well. But I think the United States, I think we've made our argument. And if Your Honors don't have further questions, we would request that this Court affirm the judgment of the District Court. Thank you. Thank you, Your Honors. Ms. Carpenter, you have some rebuttal time. Thank you, Your Honor. I want to start, Judge Duncan, with the question you just asked there. And I think it's important to note that the government, I think, is still a bit there to articulate the limits and the scope of the rule that they're asking the Court to apply here. And I think the reason for that is it's unbounded to the text. So it's unclear if their definition of conspiracy, they seem to be saying, as I understand their argument, they seem to be saying if the object of the conspiracy is really, really bad, we can ignore that the conspiracy itself doesn't conform to the contemporary definition. Ms. Ray pointed out that it's limited to enumerated offenses. So that goes a little bit beyond my question. It does. And it also begs the question, what about state offenses? You know, it's clear that in the vast majority of states, they apply. The vast one-third of the states do not require an overt act. Your Honor, in Ron Hill Castaneda, you described, I think it was 34 jurisdictions there, as a robust majority. Here we're all the way up to 40. And I know, Judge Wilkinson, that you disagree with me on this point, but I do need to emphasize it for Judge Traxler and Judge Duncan, which is that we absolutely take issue with the premise that this language is clear. Because the Commission said conspiring, but that absolutely begs the question of what do we mean by conspiring? And you see that with Judge Cogburn and the sentencing hearing struggling through. Well, somebody's got to tell me what that means. I guess the question for me is, is it defined by the object of the conspiracy? And it can't be. That's the crux of my. Right. And so if you allow it, so here's my pitch on that. If you allow it to be defined by the object of the conspiracy, you're doing the exact opposite of a broad consensus definition. Because, and the Fifth Circuit points this out in its decision, which is that 47 out of 50 states apply an all or nothing approach. Either it's always required or it's never required. Only three states and then add in the federal government apply this offense-specific definition where sometimes an overt act is required, sometimes it's not. So I think it would be absolutely anathema to tailor into the broad consensus contemporary definition. Point is what the sentencing guidelines say. And they don't say anything, Your Honor. They say conspiracy all along. They don't say anything. A conspiracy means at a very minimum an agreement. Whether there's an overt act requirement or not, there's an agreement. And there's participation in that agreement. And the agreement is to commit a crime that is in the enumerated clause of 4B1. We are trying to talk ourselves out of something that is perfectly plain. Well, and I, again, I very much vigorously dispute the notion that it's perfectly plain. I would take the court to the, I think the analysis in the Tenth Circuit's decision in Martinez-Groves is persuasive. And in that decision, they go to lengths to say. And the other three circuits are not. Well, first, two of them are specifically limited to the context of drug trafficking conspiracy. So if you look at the Ninth Circuit, they drop footnotes and caveats that say, we think this is limited to this circumstance. The Sixth Circuit's reasoning by implication is also very specific to drug trafficking. Only the Fifth and the Tenth have addressed it in the context of the, in that other context. So, again, the Tenth Circuit in Martinez-Groves goes to lengths to say, if the Sentencing Commission wants to cover all manner of conspiracy without regard to the contemporary definition, they have the tools to do it. They could have said, in a parenthesis, whether or not an overt act is required. They could have specifically incorporated a particular federal offense, as they did with many other federal offenses in the definition. They didn't do those things. And we have to respect their choices to leave the term undefined. Of course you have to respect their choices. And they listed conspiring to do the same as being, as qualifying as a crime of violence. And that is what this predicate offense of 959A5 did. It matches up. It matches up quite plainly with what 4B1.1 says. That's only if we assume that the commission intended to use that term in the non-majority way. They intended to use this. Conspiring. I don't think they qualified it. They didn't, and they could have. And that's the point. When they don't qualify it, we go to the contemporary definition. But I want to step back and say, as a matter of policy and how this all turns out, the court shouldn't be all that concerned that if it excludes these no overt act conspiracies, it's going to be some kind of giant windfall to all kinds of criminal defendants out there. Because the commission gives us the tools, gives district court judges the tools to say, well, look, if an offense falls outside of the scope of the definition of a crime of violence, but it actually involved real live violence, the district courts can consider that under 3553A. It made that explicit again in this most recent amendment to say, look, we want the. But not in the context of the crime of violence definition. Just make up for it in other areas of sentencing. Sure. So what the commission. That's what you're saying. Yes. And so what the commission seems to be getting at, again, at page 131 in supplement to appendix C, it says we're narrowing these definitions based on the goal of making sure these imply only to the most dangerous offenders. And then what they go on to say is, you know, if something we took out like a burglary, for example, involved actual violence, then the court can consider that at the sentencing in a specific, you know, case specific manner. And so that ensures that whatever the court rules here, you know, it's not going to greatly disrupt sentencing at the end of the day. We're always given these soothing reassurances, every case that's come up here. And cumulatively we have talked ourselves into a position where virtually nothing qualifies categorically as a crime of violence. And the Supreme Court is backing away from it. And I say again what is probably useless to say again, but Congress and the sentencing commission, when it did these things, really did have as an object more serious punishment for more serious offenses. And it was that simple. And decision by decision it is now being undermined. The purpose is being rendered nugatory. Well, you know, I think I disagree as an empirical matter that we're not seeing anything qualifying as a crime of violence anymore. We're up here all the time precisely because there are lots and lots of crimes that do still count. And, you know, this happens to be one that if you apply the text and you apply the contemporary definition, this particular one doesn't count. But I would finish by taking you, Judge Wilkinson, back to the Ron Hill casting aid decision that did come out our way. Page 379, you say very articulately there, look, this contemporary definition approach, it cuts both ways. Sometimes it benefits the government. Sometimes it benefits the defendant. I don't believe in that decision. What was the crime involved? It was a statutory rape. It was a statutory rape. And there was a question that was certainly nothing like what we have here. I don't think statutory rape categorically qualifies as a crime of violence by virtue of common sense. But surely we cannot equate statutory rape with a conspiracy to commit murder. Those are two different things. But the thing was statutory rape was enumerated in the crime of violence definition, like it or not. The Sentencing Commission said we had to apply it, so we had to give it the contemporary definition. But I think the key point that you made that I want to emphasize is what you said in that case. Sometimes it benefits the government. Sometimes it benefits the defendant. But our task as a court, you said, is to apply the Taylor decision in a neutral manner. And that's what I beg the court to do here. Apply the Sentencing Commission's words and let the chips fall where they may. What I am saying is I think every court in the country would say that your first guide is the text. And I haven't seen anything where the text of the thing is that clear. I mean, that's what the rule of law is all about. Well, I would go to Judge Breeder's decision in the district court in Maryland who wrote this out and we cited it in the brief. And he disagrees with you. He says, look, I look at this text and I don't know what this means. Which version of conspiracy do I apply? There are all kinds of people that disagree with me on everything and they're on the other side. Well, and I think if anything else, that tells us it's not actually all that clear because reasonable minds can disagree what this conspiracy means. All right. I'm going to give you the last word. Anything else you want to say? No, Your Honor. Again, I would just ask the court to do what you said in Ronald Hill Castaneda, apply Taylor in a neutral manner, and we'll go from there. Always enjoy your arguments, sir. Thank you, Judge. They're always very well presented. The same goes for you, Ms. Ray. We'll come down and shake hands with you and move into our next case.
judges: J. Harvie Wilkinson III, William B. Traxler, Jr., Allyson K. Duncan